UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TEXAS

| | |
|---|---|
| MARICEL FORTEZA, Pro-se<br>Plaintiff,<br><br>v.<br><br>Pelican Investment Holdings Group, LLC<br>DBA AAP and Auto Service Department,<br>US Dealer Services, Inc. DBA US Auto,<br>Palmer Administrative Services, Inc., Sing<br>For Service, LLC DBA MEPCO<br><br>Defendants | §<br>§<br>§<br>§<br>§<br>§ Case No: 4:23-cv-00401-ALM-KPJ<br>§<br>§<br>§<br>§ |

**FILED**
MAY 2 5 2023
Clerk, U.S. District Court
Eastern District of Texas

## PLAINTIFF'S AMENDED COMPLAINT

### PARTIES

1. The Plaintiff is Maricel Forteza and natural person and was present in Texas for all calls in this case in Dallas County.

2. Pelican Investment Holdings Group, LLC is an active Delaware corporation and can be served via registered agent, Corporate Creations Network Inc., at the address 3411 Silverside Road Tatnall Building Ste 104, Wilmington, DE 19810.

3. Pelican is the registered owner of AAP or Affordable Auto Protection, LLC, which is a defunct Florida corporation, and can be served at the address 1300 Old Congress Rd., West Palm beach, FL 33409.

4. Pelican also does business as "Auto Service Department", which is listed in the Vehicle Service Contract as the seller with an address of 555 N Park Drive Suite 200,

Santa Ana, CA 92705 or 1300 Old Congress Rd., West Palm Beach, FL 33409.

5. US Dealer Services, Inc. is an active California corporation and can be served at the address 6837 Hayvenhurst Ave. Van Nuys, CA 91406.

6. Palmer Administrative Services, Inc. is an active New Jersey corporation and can be served via registered agent, Corporation Service Company at the address Princeton South Corporate Center, Suite 160, 100 Charles Ewing Blvd. Ewing, NJ 08628.

7. Sing For Service, LLC DBA MEPCO is an active Illinois corporation and can be served via registered agent, Illinois Corporation Service Company at the address 801 Adlai Stevenson Dr. Springfield, IL 62703.

## JURISDICTION AND VENUE

8. **Jurisdiction.** This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. Mims v. Arrow Fin. Servs., LLC, 565 U.S. 368, 372 (2012). This Court has supplemental subject matter jurisdiction over Plaintiff's claim arising under Texas Business and Commerce Code 305.053 because that claim: arises from the same nucleus of operative fact, i.e., Defendants' telemarketing robocalls to Plaintiff; adds little complexity to the case; so it is unlikely to predominate over the TCPA claims.

9. **Personal Jurisdiction.** This Court has general personal jurisdiction over the Defendants because they have repeatedly placed calls to Texas residents, and derived revenue from Texas residents, and they sell goods and services to Texas residents, including the Plaintiff. Matrix Financial Services, LLC is an active corporation registered in Texas as Matrix Capital Services LLC and is operating in Texas.

10. This Court has specific personal jurisdiction over the defendants because the calls at

issue were sent by or on behalf of Defendants.

11. **Venue.** Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to the claims—the calls and sale of goods and services directed at Texas residents, including the Plaintiff—occurred in this District and because the Plaintiff resides in this District. Residing in the Northern District of Texas when she received a substantial if not every single call from the Defendants that are the subject matter of this lawsuit.

12. This Court has venue over the Defendants because the calls at issue were sent by or on behalf of the above named Defendants to the Plaintiff who is a Texas resident.

### THE TELEPHONE CONSUMER PROTECTION ACT OF 1991
### 47 U.S.C. § 227

13. In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding telemarketing and to regulate the explosive growth of the telemarketing industry. In doing so, Congress recognized that "[u]nrestricted telemarketing... can be intrusive invasion of privacy[.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

14. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

15. The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without

the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States, or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

16. The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b). 47 U.S.C. § 227(b)(3).

17. Separately, the TCPA bans making telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[1]

18. The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

19. According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

20. The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

21. In 2013, the FCC required "prior express written consent" for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. In particular:[A] consumer's written consent to receive telemarketing robocalls

---

[1] *See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017) (codifying a June 26, 2003 FCC order).

must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service."

22. In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

23. The FCC confirmed this principle in 2013, when it explained that "a seller ... may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." In the Matter of the Joint Petition Filed by Dish Network, LLC, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

24. Under the TCPA, a text message is a call. Satterfield v. Simon & Schuster, Inc., 569 F.3d 946, 951 – 52 (9th Cir. 2009).

25. A corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. E.g., Jackson Five Star Catering, Inc. v. Beason, Case No. 10-

10010, 2013 U.S. Dist. LEXIS 159985, at *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute." (internal quotation marks omitted)); Maryland v. Universal Elections, 787 F. Supp. 2d 408, 415 – 16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

## THE TEXAS BUSINESS AND COMMERCE CODE
### Title 10 - Use of Telecommunication
### Subtitle A - Telephones

26. The Texas Business and Commerce code 305.001 prohibits a person to call a mobile number using automatic dialing device without consent for the purpose of making a sale. This Texas law has analogous portion that is related to the TCPA and was violated in this case.

27. The Plaintiff may seek damages under the Texas Business and Commerce Code § 305.053 for violations of 47 USC 227 or subchapter A and seek $500 for each violation in statutory damages or $1,500 for each violation for willful or knowing damages.

28. The Texas Business and Commerce Code § 302.101(a) states that a seller may not make a telephone solicitation from a location in this state or to a purchaser located in this state unless the seller holds a registration certificate for the business location from which the telephone solicitation is made. A person who violates this chapter is subject to a civil penalty, which the Plaintiff may seek damages of up to $5,000 for each violation under Texas Business and Commerce Code § 302.302.

## FACTUAL ALLEGATIONS

29. The Plaintiff is a natural person.

30. The Plaintiff's telephone number is (469) 212 - 3582.

31. That telephone number is assigned to a wireless service.

32. That telephone number has been on the National Do Not Call Registry since October 3, 2022.

33. That telephone number is used for residential purposes and is used by the Plaintiff solely.

34. That telephone number is not associated with a business.

35. The Plaintiff has received multiple calls from multiple entities selling the extended car warranty services of Palmer Administrative Services, Inc. and several related entities by multiple agents of Palmer Administrative Services, Inc.

36. Defendants routinely violates the TCPA as a part of their business model and knowingly and willfully commit TCPA violations.

37. Defendants Pelican Investment Holdings Group, LLC DBA AAP and Vehicle Service Department, Palmer Administrative Services, Inc. and Sing for Service, LLC DBA MEPCO have been previously sued multiple times in federal and state courts across the country for alledly violating the TCPA. (See Cunningham v. Palmer Administrative Services, Inc., et.al, 2015 Case No. 3:2015-cv-00566 as an example)

38. Despite these prior lawsuits, Defendants haved failed to reform their business practices to being them in compliance with the TCPA.

### Alleged calls to the Plaintiff and violations of 47 USC 227(b)

39. Plaintiff Forteza received multiple calls from a variety of spoofed caller ID's that

were initiated using an automated telephone dialing system. The calls were on behalf of each Defendants in this case offering their products/services as a result of the calls. The calls had a delay of 3-4 seconds of dead air after the Plantiff picked up the phone before the agent answers the call indicating the calls were initiated using an ATDS. The Plaintiff received calls directly from the corporations and on behalf of these corporations by 3rd party telemarketers for both direct and vicarious liability in this case.

40. Plaintiff received multiple calls from multiple spoofed and non-working caller ID's all designed to trick consumers into picking up the phone by using false, misleading, and fraudulent caller ID's. These calls were not related to any emergency purpose.

41. Plaintiff has received at least 6 calls between October 12, 2022 and January 19, 2023 to her personal cell phone number 469-212-3582, without her prior express written consent and not related to an emergency purpose, selling extended car warranty services from the Defendants. See Exhibit A for the table detailing the calls made by the Defendants to the Plaintiff's cell phone number.

42. All 6 calls were initiated by an automated telephone dialing as indicated by a 3-4 second delay of dead air when the call first connected.

43. Defendants use phone number with local Texas area codes like 254, 737, 972, and 469. These phone numbers are non-working numbers and were picked specifically to trick consumers into picking up the call as they appear to be local calls. This is called "Neighborhood Spoofing".

44. On October 28, 2022, Plaintiff received a call from the Defendant Auto Service Department selling extended car warranty. To confirm solicitation, the Defendant

sent the Plaintiff the contract, RPP Supreme Powertrain Enhanced Vehicle Service Agreement. The contract was from Auto Service Department, who is the Seller. The contract also shows Defendant Palmer Administrative Services, Inc. as the Administrator of the Contract. MEPCO is the Finance Company or the Payment Plan Provider. See Exhibit B for the vehicle service agreement showing these information.

45. On January 17, 2023, Plaintiff received a call from the Defendant US Auto selling extended car warranty. To confirm solicitation, the Defendant sent the Plaintiff the contract, RPP Supreme Powertrain Enhanced Vehicle Service Agreement. The contract was from US Auto, who is the Seller. The contract also shows Defendant Palmer Administrative Services, Inc. as the Administrator of the Contract. MEPCO is the Finance Company or the Payment Plan Provider. See Exhibit C for the vehicle service agreement showing these information.

### The Plaintiff's cell phone is a residential number

46. Plaintiff's cellular phone 469-212-3582 is a personal cell phone that she uses for personal, family, and household use. The Plaintiff maintains no landline phones at her residence and has not done so for at least 10 years and primarily relies on cellular phones to communicate with friends and family. The Plaintiff also uses her cell phone for navigation purposes, sending and receiving emails, timing food when cooking, and sending and receiving text messages. The Plaintiff further has her cell phone registered in her personal name, pays the cell phone from her personal accounts, and the phone is not primarily used for any business purpose.

### Violations of the Texas Business And Commerce Code
### Title 10, Subtitle A

47. The Texas Business and Commerce code 305.001 prohibits a person to call a mobile

number using automatic dialing device without consent for the purpose of making a sale. This Texas law has analogous portion that is related to the TCPA and was violated in this case.

48. The Plaintiff may seek damages under the Texas Business and Commerce Code § 305.053 for violations of 47 USC 227 or subchapter A and seek $500 for each violation in statutory damages or $1,500 for each violation for willful or knowing damages .

49. The Texas Business and Commerce Code § 302.101(a) states that a seller may not make a telephone solicitation from a location in this state or to a purchaser located in this state unless the seller holds a registration certificate for the business location from which the telephone solicitation is made. A person who violates this chapter is subject to a civil penalty, which the Plaintiff may seek damages of up to $5,000 for each violation under Texas Business and Commerce Code § 302.302.

50. The actions of the Defendants violated the Texas Business and Commerce Code 305.053 by placing automated calls to a cell phone which violates 47 USC 227(b).

51. The calls by Defendants violated Texas law by spoofing the caller ID's per 47 USC 227(e) which in turn violates the Texas statute.

## I. FIRST CLAIM FOR RELIEF

**(Non-Emergency Robocalls to Cellular Telephones, 47 U.S.C. § 227(b)(1)(A))**
**(Against All Defendants)**

1. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

2. The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the TCPA, 47 U.S.C. § 227(b)(1)(A), by making non-emergency telemarketing robocalls to Plaintiff's cellular telephone number without her prior express written consent.

3. Plaintiff is entitled to an award of at least $500 in damages for each and every violation, purrsuant to 47 U.S.C. § 227(b)(3)(B).

4. Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(b)(3).

5. Plaintiff also seeks a permanent injunction prohibiting Defendants and their affiliates and agents from making non-emergency telemarketing robocalls to cellular telephone numbers without the prior express written consent of the called party.

## II. SECOND CLAIM FOR RELIEF

**(Telemarketing Without Mandated Safeguards, 47 C.F.R. § 64.1200(d))**
**(Against All Defendants)**

6. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

7. The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of FCC regulations by making telemarketing solicitations despite lacking:

    a. a written policy, available upon demand, for maintaining a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(1);[2]

---

[2] *See id.* at 425 (codifying a June 26, 2003 FCC order).

    b.    training for the individuals involved in the telemarketing on the existence of and use of a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(2);[3] and,

    c.    in the solicitations, the name of the individual caller and the name of the person or entity on whose behalf the call is being made, in violation of 47 C.F.R. § 64.1200(d)(4).[4]

8.    Plaintiff is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

9.    Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(c)(5).

10.    Plaintiff also seeks a permanent injunction prohibiting Defendants and their affiliates and agents from making telemarketing solicitations until and unless they (1) implement a do-not-call list and training thereon and (2) include the name of the individual caller and defendants' names in the solicitations.

### III. THIRD CLAIM FOR RELIEF

**(Violations of The Texas Business and Commerce Code 302.101(a), 302.302)**

11.    Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

12.    The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the **Texas Business and Commerce Code 302.101(a)**, by making telephone solicitation from a location in this state or a purchaser

---

[3] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[4] *See id.* at 425 – 26 (codifying a June 26, 2003 FCC order).

in this state without holding a registration certificate for the buisness location from which the telephone solicitation is made.

13. Plaintiff is entitled to an award of up to $5,000 in damages for each such violation.(Texas Business and Commerce Code 302.302)

## IV. FOURTH CLAIM FOR RELIEF

### (Violations of The Texas Business and Commerce Code 305.053)

14. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

15. The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the **Texas Business and Commerce Code 305.053,** by making non-emergency telemarketing robocalls to the Plaintiff's cellular telephone number without his prior express written consent in violation of 47 USC 227 et seq. The Defendants violated 47 USC 227(d) and 47 USC 227(d)(3) and 47 USC 227(e) by using an ATDS that does not comply with the technical and procedural standards under this subsection.

16. Plaintiff is entitled to an award of at least $500 in damages for each such violation.Texas Business and Commerce Code 305.053(b)

17. Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. Texas Business and Commerce Code 305.053(c).

## V. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Maricel Forteza prays for judgment against all the Defendants jointly and severally as follows:

A.  Leave to amend this Complaint to name additional DOEs as they are identified and to conform to the evidence presented at trial;

B.  A declaration that actions complained of herein by Defendants violate the TCPA and Texas state laws;

C.  An injunction enjoining Defendants and their affiliates and agents from engaging in the unlawful conduct set forth herein;

D.  An award of $3,000 per call in statutory damages arising from the TCPA intentional violations jointly and severally against the corporation and individual for 6 calls.

E.  An award of $5,000 per call in statutory damages arising from violations of the Texas Business and Commerce Code 302.101(a) jointly and severally against the corporations and individual for 6 calls.

F.  An award of $1,500 per call in damages arising from violations of the Texas Business and Commerce Code 305.053 jointly and severally against the corporations and individual for 6 calls.

G.  An award to Plaintiff of damages, as allowed by law under the TCPA;

H.  An award to Plaintiff of interest, costs and attorneys' fees, as allowed by law and equity.

I.  Such further relief as the Court deems necessary, just, and proper.

May 22, 2023

*[signature]*

**Maricel Forteza**
Plaintiff, *Pro Se*
3000 Custer Road, Ste 270-206
Plano, TX 75075