IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| MARICEL FORTEZA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:23-cv-401-ALM-KPJ |
| | § | |
| PELICAN INVESTMENT HOLDINGS | § | |
| GROUP, LLC d/b/a AAP and AUTO | § | |
| SERVICE DEPARTMENT, *et al.*, | § | |
| | § | |
| Defendants. | § | |

REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Pending before the Court is Defendants Pelican Investment Holdings Group, LLC ("Pelican Holdings") d/b/a AAP and Auto Service Department ("ASD") and Palmer Administrative Services, Inc.'s ("Palmer") (collectively, the "Pelican Defendants") Motion to Dismiss Plaintiff, Marciel [sic] Forteza's, Amended Complaint (the "Motion to Dismiss") (Dkt. 15), to which Plaintiff Maricel Forteza ("Plaintiff") filed a response (the "Response") (Dkt. 21), and the Pelican Defendants filed a reply (the "Reply") (Dkt. 24).[1] For the reasons that follow, the Court recommends that the Motion to Dismiss (Dkt. 15) be **DENIED**.

I.   BACKGROUND

A.   Procedural History

On April 25, 2023, Plaintiff, proceeding *pro se*, initiated this action by filing the Original Complaint (Dkt. 1) in the Northern District of Texas against the Pelican Defendants, Sing for

---

[1] Plaintiff appears to allege that the Pelican Defendants are three distinct entities: (1) Pelican Holdings; (2) AAP; and (3) Palmer. Dkt. 11 at 1–2. However, Plaintiff directs no factual allegations against AAP and admits that Pelican Holdings is doing business as both AAP and ASD. *Id.* at 1, 7.

1

Service LLC, d/b/a Mepco ("Mepco"), and US Dealer Services, Inc. d/b/a US Auto ("US Auto") (collectively, "Defendants"). *See* Dkt. 1. at 1–2. On April 25, 2023, the Clerk of Court issued summons to Defendants. *See* Dkt. 5. On May 4, 2023, United States Magistrate Judge Renee Harris Toliver raised the issue of venue *sua sponte* and ordered that this case be transferred to the Sherman Division of the Eastern District of Texas. Dkt. 6 at 3. On May 23, 2023, Plaintiff returned summons successfully for the Pelican Defendants *See* Dkt. 14. On May 25, 2023, Plaintiff filed an amended complaint (the "First Amended Complaint") (Dkt. 11) as a matter of course. *See* Dkt. 11; *see also* FED. R. CIV. P. 15(a)(1)(A). On June 27, 2023, the Pelican Defendants filed the Motion to Dismiss (Dkt. 15). *See* Dkt. 15. On August 3, 2023, the Court ordered Plaintiff to file a response, if any, to the Motion to Dismiss (Dkt. 15). *See* Dkt. 19. Plaintiff filed the Response (Dkt. 21) on August 17, 2023, *see* Dkt. 21, and the Pelican Defendants filed the Reply (Dkt. 24) on August 24, 2023. *See* Dkt. 24.

**B.     Factual Allegations**

In the First Amended Complaint (Dkt. 11), Plaintiff alleges that she maintains a cell phone number, which has been registered with the "National Do Not Call Registry" (the "Registry") since October 3, 2022. *See* Dkt. 11 at 7. Despite being on the Registry, Plaintiff alleges that she received six unauthorized telephone calls "selling the extended car warranty services of Palmer . . . and several related entities by multiple agents of Palmer." *Id.* at 7–8. Those "agents" include ASD and US Auto. *See id.* Plaintiff further alleges that these telephone calls were made by Defendants and third-party telemarketers on their behalf, giving rise to "both direct and vicarious liability." *See id.* at 8. Plaintiff contends that the calls were made from "spoofed" and "non-working" numbers aimed at tricking "consumers into picking up the call as they appear[ed] to be local calls." *Id.* Plaintiff further alleges that the calls were made using an automatic telephone dialing system

2

("ATDS"), demonstrated by the fact that there was three to four seconds of "dead air" after she answered the phone. *Id.*

Plaintiff specifically alleges that at least one call came directly from ASD. *See id.* at 8–9. After the call, Plaintiff alleges that ASD sent her a contract, which listed itself as the "Seller" and Palmer as the "Administrator." *See id.* at 9. Similarly, Plaintiff alleges that she received a call from US Auto, who sent her a contract listing itself as the "Seller" and Palmer as the "Administrator." *See id.*

Based on the forgoing conduct, Plaintiff asserts four causes of action against Defendants: (1) "Non-Emergency Robocalls to Cellular Telephones" in violation of the Telephone Consumer Protection Act of 1991 (the "TCPA"), 47 U.S.C. § 227; (2) "Telemarketing Without Mandated Safeguards" in violation of 47 C.F.R. § 64.1200(d); (3) violations of Sections 302.101(a) and 302.302 of the Texas Business and Commerce Code; and (4) violations of Section 305.053 of the Texas Business and Commerce Code. *Id.* at 10–13.

Plaintiff attaches a list of the allegedly unlawful phone calls to the First Amended Complaint (Dkt. 11), which reflect that Plaintiff received six phone calls from Texas telephone numbers beginning on October 12, 2022, and ending on January 19, 2023:

| Call Number | Date | Time | Phone Numbers |
|---|---|---|---|
| 1 | 10/12/2022 | 2:33 PM | 254-249-9976 |
| 2 | 10/21/2022 | 3:05 PM | 972-427-7455 |
| 3 | 10/28/2022 | 11:48 AM | 737-271-3010 |
| 4 | 1/9/2023 | 11:48 AM | 682-946-6661 |
| 5 | 1/17/2023 | 5:00 PM | 469-770-9111 |
| 6 | 1/19/2023 | 11:31 AM | 832-494-3040 |

Dkt. 11-1 at 2. In addition, Plaintiff attaches both contracts that she allegedly received from ASD and US Auto. Dkts. 11-2–3. The first contract names Plaintiff as the "Purchaser," ASD as the "Seller," and Palmer as the "Administrator" and is dated October 28, 2022. *See* Dkt. 11-2 at 2–3, 11. The second contract names Plaintiff as the "Purchaser," US Auto as the "Seller," and Palmer as the "Administrator" and is dated January 17, 2023. *See* Dkt. 11-3 at 2–3, 12.

**C.     Motion to Dismiss**

In the Motion to Dismiss (Dkt. 15), the Pelican Defendants argue that the First Amended Complaint (Dkt. 11) "impermissibly lumps all of the Defendants together and conclusory alleges collective wrongdoing by the Defendants as a group, without explaining any particular involvement of any of the individual Defendants." Dkt. 15 at 2 n.1. Even if they were not impermissibly "lumped" together, the Pelican Defendants argue that "only three (3) calls might be attributed to [them]. *Id.* at 2 (emphasis in original). Specifically, the Pelican Defendants contend that membership with the Registry "at the time of the alleged calls" is "an essential element" of Plaintiff's claims. *Id.* at 5. As Plaintiff admits that she "only received three (3) alleged calls more than thirty (30) days after she placed her telephone number on the Registry," the Pelican Defendants conclude that at least half of the calls cannot subject them to liability. *See id.*

The Pelican Defendants further argue that Plaintiff provides no factual support for her allegation that the calls "were made using an [ATDS]." *Id.* at 2. Likewise, the Pelican Defendants contend that Plaintiff fails to allege facts supporting the conclusion that the "unidentified calls" were made by the Pelican Defendants or placed on their behalf. *See id.* at 6. Thus, the Pelican Defendants conclude that there is "zero basis" to hold them liable for the calls. *See id.* at 6–7.

In the Response (Dkt. 21), Plaintiff argues that the "car warranty policy was sold as a result" of one of the phone calls, and the corresponding contract lists ASD as the "Seller" and

4

Palmer as the "Administrator," indicating "there [is] at least one offending call that connects back to [the Pelican Defendants]." Dkt. 21 at 2. In addition, Plaintiff argues that it is "impossible and unreasonable" for her to prove her claims "without the aid of discovery." *Id.* Similarly, Plaintiff argues that, at the pleading stage, it is "impossible to identify" the exact calls and the identity of the callers. *Id.* at 3–4. According to Plaintiff, the "car warranty [sic] contract is sufficient evidence to show the [Pelican Defendants'] involvement in this case." *Id.* at 4.

In addition, Plaintiff argues that the TCPA prohibits "any call without prior express consent using any [ATDS]"—not just calls to telephone numbers registered with the Registry. *Id.* at 3. Thus, Plaintiff concludes that membership on the Registry is not an essential element of her claim and, instead, "is an additional violation over and above just not pestering consumers with unwanted calls." *Id.*

## II.     LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a defendant to move for dismissal of an action if the plaintiff fails to state a claim upon which relief can be granted. *See* FED. R. CIV. P. 12(b)(6). "In evaluating motions to dismiss filed under Rule 12(b)(6), the court 'must accept all well-pleaded facts as true, and . . . view them in the light most favorable to the plaintiff.'" *Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 899 (5th Cir. 2019) (quoting *Campbell v. Wells Fargo Bank, N.A.*, 781 F.2d 440, 442 (5th. Cir. 1986)). "Further, '[a]ll questions of fact and any ambiguities in the controlling substantive law must be resolved in the plaintiff's favor.'" *Id.* (quoting *Lewis v. Fresne*, 252 F.3d 352, 357 (5th Cir. 2001)). However, courts are "not bound to accept as true 'a legal conclusion couched as a factual allegation.'" *In re Ondova Ltd.*, 914 F.3d 990, 993 (5th Cir. 2019) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

5

"The well-pleaded facts must permit the court 'to infer more than the mere possibility of misconduct.'" *Hale v. King*, 642 F.3d 492, 499 (5th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). That is, the complaint "must allege enough facts to move the claim 'across the line from conceivable to plausible.'" *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011), *as revised* (Dec. 16, 2011) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether the plausibility standard has been met is a 'context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id.* (quoting *Iqbal*, 556 U.S. at 663–64).

At the motion to dismiss stage, "[t]he court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Allen v. Vertafore, Inc.*, 28 F.4th 613, 616 (5th Cir. 2022) (quoting *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010)).

### III. ANALYSIS

**A.    Motion to Dismiss**

In the Motion to Dismiss (Dkt. 15) and the Reply (Dkt. 24), the Pelican Defendants do not specify which of their arguments apply to which claims. *See* Dkts. 15; 24. Therefore, the Court considers the applicability of their arguments to each of Plaintiff's claims in turn.

**1.    47 U.S.C. § 227(b)**

The TCPA prohibits, among other things, "any person" from making "any call . . . using any [ATDS] . . . to any telephone number assigned to a . . . cellular telephone service" without prior consent. *See* 47 U.S.C. § 227(b)(1)(A). Thus, "[t]he three elements of a TCPA claim are: (1) the defendant called a cellular telephone number; (2) using an [ATDS]; (3) without the

6

recipient's prior express consent." *Cunningham v. Nationwide Sec. Sols., Inc.*, No. 17-cv-337, 2017 WL 10486988, at *2 (N.D. Tex. Nov. 2, 2017) (cleaned up).

### i.     Registry Membership

The Pelican Defendants argue that "[l]iability under the TCPA requires, as an essential element, that Plaintiff was registered on the Registry at the time of the alleged calls." Dkt. 15 at 5. As Plaintiff points out, § 227(b) imposes no such requirement. *See* Dkt. 21 at 3 ("Liability under the TCPA is independent from being registered on the Registry.").[2] A plaintiff need only allege that the defendant called a cell phone, using an ATDS, without prior consent. *See Cunningham*, 2017 WL 10486988, at *2. Therefore, the Pelican Defendants' argument is without merit.

### ii.     Automatic Telephone Dialing System

The Pelican Defendants also contend that Plaintiff concludes—without factual support—that the alleged calls were made using an ATDS. *See* Dkt. 15 at 2. According to the Pelican Defendants, Plaintiff's allegations are, therefore, "legally insufficient." *See id.*[3] The Court disagrees.

"A TCPA claim requires that the defendant have used 'an automatic telephone dialing system.'" *Garcia v. Pro Custom Solar LLC*, No. 21-cv-392, 2022 WL 95281, at *2 (E.D. Tex. Jan. 10, 2022) (quoting 47 U.S.C. § 227(b)(1)(A)). For the purposes of the TCPA, an ATDS is any

---

[2] The Pelican Defendants appear to confuse causes of action brought under § 227(b), which do not require Registry membership, and those brought under § 227(c), or its implementing regulations, which often require Registry membership. *See* 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c).

[3] The Pelican Defendants also use the Motion to Dismiss (Dkt. 15) to assert factual allegations of their own. Specifically, the Pelican Defendants allege that they do not use an ATDS; nor have they "authorized or permitted any other parties to utilize an ATDS on their behalf." *See* Dkt. 15 at 3. While these allegations may ultimately prove true, the Court cannot consider them at this juncture. When considering a motion to dismiss, the Court may only consider the "complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Allen*, 28 F.4th at 616 (*quoting Lone Star Fund V (U.S.), L.P.*, 594 F.3d at 387); *see Morris v. City of New Orleans*, 350 F. Supp. 3d 544, 551–52 (E.D. La. 2018) (declining to consider "extraneous allegations" because "the Court may only rely on the factual allegations contained within the plaintiff's complaint when deciding a Rule 12(b)(6) motion to dismiss").

equipment "which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). An allegation that the phone call "began with a pause" is ordinarily sufficient to plausibly allege ATDS capacity. *Garcia*, 2022 WL 95281, at *3; *see McGrath v. Conn Appliances, Inc.*, No. 19-cv-1930, 2020 WL 10936167, at *5 (S.D. Tex. Oct. 30, 2020) (holding that the plaintiff sufficiently pleaded ATDS capacity by alleging that he "heard a pause or a 'beep' when he answered [the defendant's] calls before being transferred to a live agent"); *Callier v. McCarthy Law, PLC*, No. 21-cv-15, 2021 WL 6010595, at *3 (W.D. Tex. Dec. 20, 2021) (same), *R. & R. adopted*, 2022 WL 1098843 (W.D. Tex. Jan. 12, 2022).

In the present case, Plaintiff alleges that "[a]ll 6 calls were initiated by an [ATDS] as indicated by a 3–4 second delay of dead air when the call first connected." Dkt. 11 at 8. At least one of those calls came directly from ASD. *See id.* at 8–9. Such an allegation is sufficient, at this stage, to plausibly allege that calls were made using a device with the capacity to store or produce and dial numbers using a random or sequential number generator—an ATDS. *See, e.g.*, *Garcia*, 2022 WL 95281, at *3; *see also Facebook, Inc. v. Duguid*, 592 U.S. 395, 398 (2021) ("To qualify as an '[ATDS],' a device must have the capacity either to store a telephone number using a random or sequential generator or to produce a telephone number using a random or sequential number generator."). Thus, the Pelican Defendants' contention is meritless.

      **iii.**    **Direct or Vicarious Liability**

Finally, the Pelican Defendants argue that Plaintiff fails to allege facts indicating "that the unidentified calls were from [the Pelican Defendants] or were being placed on" their behalf. Dkt. 15 at 6. Thus, they conclude that the calls "could have come from **anyone**." *See id.* (emphasis in original). Once again, the Pelican Defendants are mistaken.

8

The Federal Communications Commission (the "FCC") has determined that, "under federal common-law principles of agency, there is vicarious liability for TCPA violations." *Campbell-Ewald Co. v. Gomez*, 557 U.S. 153, 168–69 (2016) (citing *In re DISH Network, LLC*, 28 FCC Rcd. 6574 (2013)); *see, e.g.*, *Callier v. MultiPlan, Inc.*, No. 20-cv-318, 2021 WL 8053527, at *15 (W.D. Tex. Aug. 26, 2021) (applying principles of agency law to determine vicarious liability under the TCPA). "The classical definition of 'agency' contemplates 'the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control." *In re DISH Network, LLC*, 28 FCC Rcd. at 6586 (quoting RESTATEMENT (THIRD) OF AGENCY § 1.01 (Am. L. Inst. 2006)). Thus, "[u]nder common-law principles of agency, whether vicarious liability exists depends on the principal's level of control over the agent." *Hirsch v. USHealth Advisors, LLC*, 337 F.R.D. 118, 132 (N.D. Tex. 2020) (collecting cases).

In the present case, Plaintiff specifically alleges that at least one of the calls came directly from ASD—one of the Pelican Defendants. *See* Dkt. 11 at 8 ("On October 28, 2023, Plaintiff received a call from [ASD] selling [an] extended car warranty."). Accordingly, Plaintiff has sufficiently alleged that ASD may be held directly liable under the TCPA. *See* 47 U.S.C. § 227(b)(1)(A) (imposing liability on those who "make" the "call"). In addition, Plaintiff has sufficiently alleged that Palmer may be held vicariously liable for the conduct of ASD.

After ASD sold the warranty to Plaintiff over the phone, Palmer—not ASD—issued the contract to Plaintiff. *See* Dkt. 11-2 at 11 ("[Plaintiff] has purchased a service contract . . . from [ASD] that is issued by [Palmer]."). Under the contract, Palmer—not ASD—bore many of the contractual rights and obligations. *See, e.g.*, *id.* at 6 (obligating Palmer to "repair or replace covered parts or components"); *id.* ("All repair[s] or replacements shall be performed by an authorized

9

repair facility approved by [Palmer]."); *id.* at 7 ("All covered repairs must receive prior authorization from [Palmer]."). Plaintiff also alleges that Palmer's agents, including ASD, were acting on its behalf. *See* Dkt. 11 at 7. Based on these allegations, it is reasonable to infer the existence of an agency relationship between ASD and Palmer; that is, Palmer, as the principal, authorized ASD, as the agent, to sell warranties on its behalf. *Cf. MultiPlan, Inc.*, 2021 WL 8053527, at *15. As such, the Pelican Defendants' final argument is erroneous, and the Motion to Dismiss (Dkt. 15) should be denied with respect to Plaintiff's § 227(b) claim.

### 2. 47 C.F.R. § 64.1200(d)

The TCPA authorizes the FCC to pass regulations "concerning the need to protect residential telephone subscribers' privacy rights." 47 U.S.C. § 227(c)(1). Pursuant to that directive, the FCC prohibited any "person or entity" from making "any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive such calls made by or on behalf of the person or entity." 47 C.F.R. § 64.1200(d).[4]

---

[4] The Court notes that there is a split of authority regarding whether "residential telephone subscriber" includes cell phone users. *Compare Callier v. Nat'l United Grp., LLC.*, No. 21-cv-71, 2021 WL 5393829, at *9 (W.D. Tex. Nov. 17, 2023) ("[Defendant's] claim that § 64.1200(d) does not apply to cell phones is . . . erroneous; it applies to any cell phone being used as a residential phone." (citations omitted)), *and Hunsinger v. Alpha Cash Buyers, LLC*, No. 21-cv-1598, 2022 WL 562761, at *3 & n.3 (N.D. Tex. Feb. 24, 2022) (holding that "cellular telephone owners" may qualify as "residential telephone subscribers" when they receive "telephone calls and text messages on a cellular telephone that [is] used for residential purposes"), *with Callier v. GreenSky, Inc.*, No. 20-cv-304, 2021 WL 2688622, at *6 (W.D. Tex. May 10, 2021) (holding that calls made to a cell phone and "not a residential line" preclude liability under § 64.1200(d)), *and Cunningham v. Britereal Mgmt., Inc.*, No. 20-cv-144, 2020 WL 7391693, at *7 (E.D. Tex. Nov. 20, 2020) (holding that § 64.1200(d) is inapplicable to "cell phones"), *R. & R. adopted*, 2020 WL 7388415 (E.D. Tex. Dec. 16, 2020). However, as the Pelican Defendants have not made any argument regarding the applicability of § 64.1200(d) to cell phones, the Court declines to address this issue.

Likewise, the Court notes that there is a split of authority on whether § 64.1200(d) creates a private right of action. *Compare Callier v. Debt Mediators, LLC*, No. 21-cv-278, 2022 WL 1423622, at *5 (W.D. Tex. May 5, 2022) (private right of action), *with Burdge v. Ass'n Health Care Mgmt., Inc.*, No. 10-cv-100, at *4 (S.D. Ohio Feb. 2, 2011) (no private right of action). Once again, the Pelican Defendants have not made any argument regarding whether § 64.1200(d) creates a private right of action—or whether Plaintiff satisfies the elements necessary to sustain a private right of action. *See* 47 U.S.C. § 227(c)(5) (required elements). Thus, the Court similarly declines to address this issue. However, the Court notes that "most courts addressing this issue—including the Third, Sixth, and Eleventh Circuits—

The Pelican Defendants' arguments are unavailing for many of the reasons stated above. A plaintiff need not plead Registry membership or ATDS capacity to state a claim under § 64.1200(d). Likewise, based on the Court's conclusion that Plaintiff has successfully pleaded that the Pelican Defendants may be held directly or vicariously liable, *see supra* Section III.A.1.iii, the Pelican Defendants' final argument cannot be sustained. Therefore, the Motion to Dismiss (Dkt. 15) should be denied with respect to Plaintiff's § 64.1200(d) claim.

### 3. Sections 302.101 and 302.302 of the Texas Business and Commerce Code

Section 302.101 of the Texas Business and Commerce Code provides that "[a] seller may not make a telephone solicitation from a location in this state or to a purchaser located in this state unless the seller holds a registration certificate for the business location from which the telephone solicitation is made." TEX. BUS. & COM. CODE ANN. § 302.101(a). A violation of this provision subjects the violator "to a civil penalty of not more than $5,000." *Id.* § 302.302(a). In-circuit courts have determined that "common law principles of agency apply here, too." *See, e.g.*, *Guadian v. Progressive Debt Relief, LLC*, No. 23-cv-235, 2023 WL 7393129, at *4 (W.D. Tex. Nov. 8, 2023) (collecting cases), *R. & R. adopted*, 2023 WL 8242475 (W.D. Tex. Nov. 28, 2023).

Once again, many of the Pelican Defendants' contentions are irrelevant to this cause of action. *See* Dkt. 15 at 2 (arguing that Plaintiff fails to allege that the Pelican Defendants used an ATDS); *id.* at 5 (contending that Plaintiff's failure to timely enroll in the Registry is fatal to her claims arising under the Business and Commerce Code). In addition, because "common law principles of agency apply here," and the Court has already concluded that, under these principles, Plaintiff has sufficiently pleaded direct and derivative liability, the Pelican Defendants' final argument is without merit. *See id.* at 5–6 (arguing that Plaintiff fails to allege that the Pelican

---

have found that § 64.1200(d) was promulgated under § 227(c) and is thus enforceable by that section's private right of action." *Debt Mediators, LLC*, 2022 WL 1423622, at *3 (collecting cases).

Defendants either made the calls or that the calls were made on their behalf). Thus, the Motion to Dismiss (Dkt. 15) should be denied with respect to this claim.

### 4. Section 305.053 of the Texas Business and Commerce Code

Section 305.053 of the Texas Business and Commerce Code provides that any "person who receives a communication that violates [the TCPA] . . . may bring an action in this state against the person who originates the communication." TEX. BUS. & COM. CODE ANN. § 305.053. As discussed above, Plaintiff has plausibly alleged a TCPA claim; thus, she has plausibly alleged a claim here as well. As such, the Motion to Dismiss (Dkt. 15) should be denied with respect to this claim.

Because Plaintiff has plausibly alleged each of her causes of action against the Pelican Defendants, the Court concludes that the Motion to Dismiss (Dkt. 15) should be denied.

### I. CONCLUSION

For the foregoing reasons, the Court recommends that the Motion to Dismiss (Dkt. 15) be **DENIED**.

Within fourteen (14) days after service of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C).

A party is entitled to *de novo* review by the district court of the findings and conclusions contained in this report only if specific objections are made, and failure to timely file written objections to any proposed findings, conclusions, and recommendations contained in this report shall bar an aggrieved party from appellate review of those factual findings and legal conclusions accepted by the district court, except on grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *Id.*; *Thomas v. Arn*,

474 U.S. 140, 148 (1985); *see also Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**So ORDERED and SIGNED this 27th day of December, 2023.**

_____
KIMBERLY C. PRIEST JOHNSON
UNITED STATES MAGISTRATE JUDGE