**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| MARICEL FORTEZA, | Case No. 4:23-CV-00401-ALM-KPJ |
| Plaintiff, | |
| v. | **JURY TRIAL DEMANDED** |
| PELICAN INVESTMENT HOLDINGS GROUP, LLC DBA AAP AND AUTO SERVICE DEPARTMENT, US DEALER SERVICES, INC. DBA US AUTO, PALMER ADMINISTRATIVE SERVICES, INC., SING FOR SERVICE, LLC DBA MEPCO | |
| Defendants. | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT**
**SING FOR SERVICE, LLC D/B/A MEPCO's MOTION TO DISMISS**

## <u>Table of Contents</u>

I.  **Introduction** ................................................................................................................... 1

II.  **Factual Background** ..................................................................................................... 1

III.  **Legal Standard** ............................................................................................................ 2

IV.  **Argument** ...................................................................................................................... 3

    A.   The Plaintiff has adequately pled Mepco's vicarious liability for the calls at issue because, beyond her pleadings, which must be accepted as true, the Plaintiff has produced documents which demonstrate Mepco's involvement in the calls Plaintiff received. ................ 3

    B.   Defendant's remaining weak arguments should likewise be rejected because they are directly contrary to the overwhelming weight of case law and regulatory guidance. ................ 8

        1.   Section 227(c) of the TCPA unquestionably applies to cell phones, as multiple courts have held and as the FCC has recently confirmed. ................................................................. 8

        2.   Violations of the Texas Business and Commerce Code are independently actionable even if there is no TCPA violation, as its plain text makes clear. Regardless, the Plaintiff has adequately pled TCPA violations. ................................................................................. 13

V.  **Conclusion** ................................................................................................................. 15

**CERTIFICATE OF SERVICE** .................................................................................... 16

## Table of Citations

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ................................................................. 2

*Barton v. Temescal Wellness, LLC*, No. 4:20-cv-40114-TSH, 2021 U.S. Dist. LEXIS 42211 (D. Mass. Mar. 8, 2021) ................................................................. 9

*Becker v. Pro Custom Solar LLC*, No. 219CV535FTM29NPM, 2020 WL 474647 (M.D. Fla. Jan. 29, 2020). ................................................................. 10

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .................................................. 2, 3

*Boardman v. Green DOT Corp.*, No. 21-cv-174, U.S. Dist. LEXIS 156403 (W.D.N.C. Aug. 19, 2021) ................................................................. 9

*Callier v. Nat'l United Grp., LLC*, No. EP-21-CV-71-DB, 2022 WL 4088205 (W.D. Tex. Sept. 6, 2022) ................................................................. 3, 12

*Callier v. Nat'l United Grp., LLC.*, 2021 WL 5393829 (W.D. Tex. Nov. 17, 2021) .................. 12

*Campbell-Ewald Co. v. Gomez*, 557 U.S. 153 (2016) .................................................... 3

*Cherakaoui v. Stantander Consumer USA, Inc.*, 32 F. Supp. 3d 811 (S.D. Tex. 2014) .............. 13

*Couser v. Pre-paid Legal Servs., Inc.*, 994 F. Supp. 2d 1100 (S.D. Cal. 2014) ........................ 4

*Dolemba v. Ill. Farmers Ins. Co.*, 213 F. Supp. 3d 988 (N.D. Ill. 2016) ........................ 4

*Garcia v. Pelican Inv. Holdings Grp., LLC*, No. SACV2200699CJCJDEX, 2022 WL 17550828 (C.D. Cal. Nov. 10, 2022) ................................................................. 6

*Hall v. Smosh Dot Com, Inc.*, 72 F.4th 983 (9th Cir. 2023) ........................................ 9

*Hirsch v. USHealth Advisors, LLC*, 337 F.R.D. 118 (N.D. Tex. 2020) .................................. 3, 12

*Hunsinger v. Alpha Cash Buyers, LLC*, No. 21-cv-1598, 2022 WL 562761 (N.D. Tex. Feb. 24, 2022) ................................................................. 12

*In re DISH Network, LLC*, 28 FCC Rcd. 6574 (2013) .............................................. 3, 4

*Klein v. Just Energy Grp., Inc.*, No. CV 14-1050, 2016 WL 3539137 (W.D. Pa. June 29, 2016) . 4

*Koester v. Pelican Inv. Holdings Grp., LLC*, No. 22 C 4119, 2023 WL 1954026 (N.D. Ill. Feb. 10, 2023) ................................................................. 6

*Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643 (4th Cir. 2019) .................................... 8

iii

*Mauer v. Am. Intercontinental Univ., Inc.*, 2016 U.S. Dist. LEXIS 120451 (N.D. Ill. Sep. 7, 2016) ................................................................................................................................ 4

*McFadden v. Washington Metro. Area Transit Auth.*, 949 F. Supp. 2d 214 (D.D.C. 2013) .......... 4

*Mey v. Matrix Warranty Sols., Inc.*, No. 5:21-CV-62, 2021 WL 11421816 (N.D.W. Va. Oct. 15, 2021) ................................................................................................................................ 6

*Riley v. California*, 573 U.S. 373 (2014) ................................................................................. 11

*Rosenberg v. LoanDepot.com LLC*, No. 19-10661-NMG, 2020 U.S. Dist. LEXIS 11928 (D. Mass. Jan. 24, 2020) ........................................................................................................ 9

*Ross v. Blake*, 578 U.S. 632 (2016). ....................................................................................... 11

*Sagar v. Kelly Auto Grp., Inc.*, No. 21-cv-10540, 2021 U.S. Dist. LEXIS 227781 (D. Mass. Nov. 29, 2021) ......................................................................................................................... 10

*Wampler v. Sw. Bell Tel. Co.*, 597 F.3d 741 (5th Cir. 2010) ................................................... 2

*Ward v. Mgmt. Analysis Co. Emp. Disability Benefit Plan*, 135 F.3d 1276 (9th Cir. 1988) .......... 4

**Statutes**

47 C.F.R. § 64.2305 ................................................................................................................ 11

47 U.S.C. § 227 ....................................................................................................................... 14

47 U.S.C. § 227(c)(1)(A-E) ..................................................................................................... 10

47 U.S.C. § 227(c)(2) .............................................................................................................. 10

47 U.S.C. § 227(c)(3) .............................................................................................................. 10

FED. R. CIV. P. 12(b)(6) ............................................................................................................ 2

TEX. BUS & COM. § 302.101 .................................................................................................... 15

TEX. BUS & COM. § 305.001 .................................................................................................... 14

**Other Authorities**

Amended Complaint, ECF No. 11 ........................................................... 1, 4, 5, 7, 9, 11, 13, 14

Complaint, ECF No. 1 ............................................................................................................... 1

Defendant Mepco's Motion to Dismiss, ECF No. 27 ................................................................. 2

Report and Recommendations Denying Motion to Dismiss, ECF No. 41 ................................. 2, 3

RESTATEMENT (THIRD) OF AGENCY (Am. L. Inst. 2006) ................................................................ 3

## I.   INTRODUCTION

Defendant Sing For Service, LLC's d/b/a Mepco's (Mepco or Defendant) motion to dismiss must be denied because the Plaintiff has pled that she received automobile service contracts, commonly but incorrectly referred to as "extended warranties" as a result of the calls she received which named Mepco and which documents included an agency clause. Defendant's attempt to employ a 12(b)(6) motion as a weapon to require the Plaintiff prove the precise nature of an agency relationship, when facts giving rise to one have been established, must be rejected. So too must this Court likewise reject Defendant's weak attempts at arguing that the TCPA's Do Not Call Registry provisions do not apply to cell phones or Defendant's argument that the Texas Business and Commerce Code does not apply. Defendant's contentions in its motion are remarkably unsupported and do not warrant dismissal because the Plaintiff has met the basic pleading standard required by Rule 8. As so many other courts have done in other TCPA cases where the defendant claims they are not vicariously liable because they did not place the calls, this case must be allowed to proceed.

## II.   FACTUAL BACKGROUND

The original complaint in this matter was filed on April 25, 2023 against various defendants, including Mepco. (ECF No. 1). Plaintiff amended her complaint on May 25, 2023 to address various deficiencies. (ECF No. 11). In her complaints, the Plaintiff also detailed her investigative process whereby she was able to identify Mepco as involved in the calls. Specifically, the Plaintiff alleged that she received vehicle service protection plans which list Mepco as a Lienholder (Exhibit B, ECF No. 11-2). The Plaintiff subsequently received bills from Mepco. (Compl. ¶ 44, 45, ECF No. 11). This Court has already held that similar allegations with respect to the other defendants in this case gave rise to the inference of an agency relationship

1

with respect to the non-moving defendants. (ECF No. 41 at p. 8–10).  In the instant motion at bar (ECF No. 27), the Defendant twists a metaphysical doubt as to the Plaintiff's allegations and own documents that list the Defendant to make a remarkable contention–that such documents do not give rise to an agency relationship. And, in a tacit concession that its claims regarding vicarious liability and agency lack merit, Defendant's 12(b)(6) motion weakly argues that the TCPA does not apply to cell phones and the Texas Business and Commerce code does not apply if there are no TCPA violations. This response follows.

### III.   LEGAL STANDARD

Under Rule 12(b)(6), a court may dismiss a complaint that fails to state a claim upon which relief can be granted. In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Rather than require detailed pleadings, the Rules demand only a "short and plain statement of the claim showing that the pleader is entitled to relief, in order to give defendant fair notice of what the claim is and the grounds upon which it rests." *Wampler v. Sw. Bell Tel. Co.*, 597 F.3d 741, 744 (5th Cir. 2010) (cleaned up). The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

In determining whether a claim is plausible, the court must "draw on its judicial experience and common sense." *Connelly*, 809 F.3d at 786–87. After identifying elements to set forth a claim and removing conclusory allegations, the Court must accept all well-pled factual allegations as true and determine if they give rise to relief. *Id.* A complaint may be dismissed

only where it appears that there are not "enough facts to state a claim that is plausible on its face," not merely because the defendant proffers some contrary facts. *Twombly*, 550 U.S. at 570.

## IV.   ARGUMENT

A.   *The Plaintiff has adequately pled Mepco's vicarious liability for the calls at issue because, beyond her pleadings, which must be accepted as true, the Plaintiff has produced documents which demonstrate Mepco's involvement in the calls Plaintiff received.*

As this Court previously stated, "The Federal Communications Commission (the "FCC") has determined that, under federal common-law principles of agency, there is vicarious liability for TCPA violations." (Report and Recommendations, ECF No. 41 at p. 9) (citing *Campbell-Ewald Co. v. Gomez*, 557 U.S. 153, 168–69 (2016); *further citing In re DISH Network, LLC*, 28 FCC Rcd. 6574 (2013)). "The classical definition of 'agency' contemplates 'the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control." *In re DISH Network, LLC*, 28 FCC Rcd. at 6586 (quoting RESTATEMENT (THIRD) OF AGENCY § 1.01 (Am. L. Inst. 2006)). Thus, "[u]nder common-law principles of agency, whether vicarious liability exists depends on the principal's level of control over the agent." *Hirsch v. USHealth Advisors, LLC*, 337 F.R.D. 118, 132 (N.D. Tex. 2020) (collecting cases).

These vicarious liability principles apply to a company who participated in or authorized another entity, like a lead generator, to perform the violative conduct, even when the seller did not directly commit the violative conduct or even place the calls at issue. *Callier v. Nat'l United Grp., LLC*, No. EP-21-CV-71-DB, 2022 WL 4088205, at *6–7 (W.D. Tex. Sept. 6, 2022) (imposing vicarious personal liability on an individual insurance agent who was responsible for writing an insurance policy based on an illegal call initiated by an unrelated, unnamed caller).

"[A] party may be liable under the TCPA in accordance with tort-related vicarious

liability rules," including actual authority, apparent authority, and ratification principles. *Klein v. Just Energy Grp., Inc*., No. CV 14-1050, 2016 WL 3539137, at \*9 (W.D. Pa. June 29, 2016). The existence of an agency relationship is normally one for the trier of fact to decide. *See Ward v. Mgmt. Analysis Co. Emp. Disability Benefit Plan*, 135 F.3d 1276, 1283 (9th Cir. 1988). Moreover, "[A] plaintiff is not required to plead all of its evidence in the complaint in order to plausibly allege agency." *Dolemba v. Ill. Farmers Ins. Co.*, 213 F. Supp. 3d 988, 996 (N.D. Ill. 2016). A plaintiff must only "allege a factual basis that gives rise to an inference of an agency relationship through the use of generalized as opposed to evidentiary facts." *Mauer v. Am. Intercontinental Univ., Inc.*, 2016 U.S. Dist. LEXIS 120451, at \*2 (N.D. Ill. Sep. 7, 2016). And the 2013 FCC ruling cited by this Court holds that called parties may obtain "evidence of these kinds of [agency] relationships . . . through discovery, if they are not independently privy to such information." *In re DISH Network*, 28 FCC Rcd. 6592-93 ¶ 46.

This Court's analysis must therefore begin and end with whether or not the Plaintiff has plausibly alleged the Defendant's involvement in the calls in a manner sufficiently giving rise to the inference of an agency relationship. She has done so by investigating the calls and receiving policy documents which name Mepco as the "lien holder." (ECF No. 11-2 p. 2). Furthermore, the policy documents indicate that the Plaintiff entered into an "installment agreement" with Mepco. (*Id.*). Numerous courts, both outside and within the TCPA context, have held that similar allegations to here are sufficient. *See, e.g.*, *Couser v. Pre-paid Legal Servs., Inc.*, 994 F. Supp. 2d 1100, 1103 (S.D. Cal. 2014) ("Whatever the true and exact relationship between CallFire and its customers is, the Court finds it to be too fact-intensive, and certainly too disputed, to be resolved at the motion to dismiss phase in CallFire's favor."); *McFadden v. Washington Metro. Area Transit Auth.*, 949 F. Supp. 2d 214, 222 (D.D.C. 2013) (holding pleading the exact nature of an

agency relationship is ill-suited to a motion to dismiss).

Requiring a putative TCPA plaintiff to allege more, such as requiring the exact contractual relationship between the various complex parties involved in the scheme of selling worthless vehicle service contracts would eviscerate the TCPA's protection and would simply allow defendants to run rampant with all manner of anonymous and unidentified calls and similar shenanigans to conceal the real players involved in such policies. The Defendant's standard provides a perverse incentive for a caller to conceal their identity by making it impossible for any plaintiff to prove a claim against the defendant at the pleadings stage based on a lack of information and evidence if a defendant is not explicitly named during an illegal call.

But the Court need not even go that far because the agreement contains a literal agency clause. That clause explicitly states that "MEPCO will, from time to time, appoint one or more third parties as its agent to take certain actions on its behalf in connection with this Agreement." (ECF No. 11-2 p. 12). Furthermore, the agency clause states that Plaintiff is "entitled to rely upon actions taken and statements made by such agents on behalf of. and in the name of, MEPCO to the same extent as if MEPCO had taken such actions or made such statements in its own name." (*Id.*). Defendant's motion should fail right there because the very documents it sent the Plaintiff include a clause demonstrating agency, obviating the need for any agency analysis.

Mrs. Forteza did not sign the purported agreement. Rather, the telemarketing agent with whom she spoke checked the box indicating approval of the terms and noted "Per Phone" on the signature line with a date of October 28, 2022, demonstrating the ability to purportedly bind Mepco. Unsurprisingly, the Complaint alleges that Mrs. Forteza received one of the calls on which the call was completed and a policy was purchased on October 28, 2022. (Compl. ¶ 44). Because the telemarketing agent was administering a Mepco-issued contract, it can reasonably

be inferred that the telemarketing agent was, at a minimum, an agent of Mepco. Whether Mepco directed the telemarketing calls or exercised a sufficient degree of control over the caller is a question to be answered in discovery. The allegations in the Complaint, taken as true, plausibly connect Mepco to the alleged calls and therefore plausibly plead a claim under the TCPA.

But even if this Court were to dive into a vicarious liability analysis, Mepco would be liable under theories of actual authority, apparent authority, and ratification, as multiple courts have held with respect to Mepco itself. *Mey v. Matrix Warranty Sols., Inc.*, No. 5:21-CV-62, 2021 WL 11421816, at *6 (N.D.W. Va. Oct. 15, 2021) (holding that allegations in the complaint, which included copy of service contract, as here, were sufficient to give rise to inference of vicarious liability); *Garcia v. Pelican Inv. Holdings Grp., LLC*, No. SACV2200699CJCJDEX, 2022 WL 17550828, at *4 (C.D. Cal. Nov. 10, 2022) (holding there was direct liability because "as Mepco concedes, Plaintiffs allege that it processes their recurring monthly payments. This is sufficient to allege Mepco's involvement in the alleged scheme" and holding there was vicarious liability "under a ratification theory" because plaintiffs alleged that the auto warranty companies "conspired with MEPCO for MEPCO to act as an Agent to process payments to finance the consumers' VSC policy monthly insurance premium payments.").

The Plaintiff's allegations in this case essentially mirror those the court in *Garcia* held were sufficient for the imposition of both direct and vicarious liability. The Plaintiff explicitly alleged in her Amended complaint, and these allegations must be treated as true, that "MEPCO is the Finance Company or the Payment Plan Provider." (Compl. ¶ 44, 45). Similar citations with respect to Defendant abound, having lost on the issue far more times than it won. *Koester v. Pelican Inv. Holdings Grp., LLC*, No. 22 C 4119, 2023 WL 1954026, at *2 (N.D. Ill. Feb. 10, 2023) ("It states as a factual matter, which must be believed, that AAP and MEPCO made the

dozens of calls to Koester.").

Vicarious liability may be found in light of the "illustrative examples" set forth in the 2013 FCC Ruling already cited by the Court, which provides that apparent authority may be supported by, among other things, evidence of (i) permissive use of trade names and trademarks, (ii) shared access to information systems, and (iii) shared information about call recipients.

So too here. As a result of the illegal calls Mrs. Forteza received, she also received payment plan agreements and other policy documents which clearly state they are provided by Defendant Mepco. Besides the literal agency provisions and indications that the telemarketers were calling from Mepco described above, this contract contains a litany of representations envisioned by the 2013 FCC Ruling. The vehicle service contract the Plaintiff received as a result of the illegal telemarketing call, among other things, included a purported contract between the Plaintiff and Mepco that stipulated that the "Balance of the Sales Price shall be paid by Purchaser to MEPCO." (ECF No. 11-2 p. 11). Not only that, but the *entire* vehicle service contract could be cancelled "BY NOTICE TO MEPCO." (*Id.*). And, perhaps most damning for Mepco's position from an implied agency perspective is a "power of attorney" clause that purports to assign to "MEPCO all of Purchaser's right, title and interest in and to the Contract, including Purchaser's rights to receive all unearned and return accounts and to assert any rights to reinstate the Contract and all proceeds thereof, and Purchaser's right to make a direct claim for indemnity against the Insurance Company." (ECF No. 11-2 p. 12).

Therefore, here, the Plaintiff has pled sufficient facts to infer an agency relationship, or at the very least, facts sufficient to permit discovery into any vicarious liability issues. Defendant does not address any of these statements in the service contract, instead (incorrectly) claiming that those contracts make no reference to Mepco, claims which are demonstrably false.

Furthermore, the second section of its brief must also fail because it is premised on the argument that the Plaintiff has not adequately pled vicarious liability, which she has. For the foregoing reasons, this Court should have little trouble holding that the Plaintiff has adequately pled the existence of an agency relationship such as to hold Mepco liable.

B.     *Defendant's remaining weak arguments should likewise be rejected because they are directly contrary to the overwhelming weight of case law and regulatory guidance.*

In the remainder of its Motion to Dismiss, the Defendant argues that the Amended Complaint fails to state a claim under Section 227(c) of the TCPA because it contends that that section does not apply to cell phones. As will be explained below, this tenuous position runs contrary to the mountain of case law on the issue and, most importantly, recently released FCC guidance. Similarly, the Defendant argues that the Plaintiff is unable to state a claim for the Texas Business and Commerce Code ("TBCC") without having a predicate TCPA claim. Because in its mind, the Plaintiff has no TCPA claims, her TBCC claims must likewise fail. Not only is the conclusion untrue because the Plaintiff has in fact stated a TCPA claim, but even if she did not, her TBCC claims confer an independent right of action unconnected to the success or failure of her TCPA claims.

1.   Section 227(c) of the TCPA unquestionably applies to cell phones, as multiple courts have held and as the FCC has recently confirmed.

"The Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649 (4th Cir. 2019). Although the Defendant claims that calls sent to the Plaintiff's personal, residential cell phone are not prohibited by the TCPA, Defendant's reading is mistaken and at odds with the mountain of case law holding otherwise.

Plaintiff has pled that her cell phone is the "used for residential purposes and is used by the Plaintiff solely." (Compl. ¶ 33). Furthermore, the Plaintiff has expressly disclaimed any business use of her cell phone. (Compl. ¶ 34). The Plaintiff, in fact, goes a step further by enumerating the residential purposes of her cell phone, including for "navigation purposes, sending and receiving emails, timing food when cooking, and sending and receiving text messages" (Compl. ¶ 46). And, like most individuals today, the Plaintiff has averred that she does not maintain a landline, has not maintained a landline "for at least 10 years" but rather that her telephone number is registered and assigned to a personal cell service.[1] (*Id.*).

As nearly every district and every circuit court to address this issue has concluded, allegations nearly identical to those here, including far more limited allegations like the one that the "number is used for residential purposes and is used by the Plaintiff solely" (Compl. ¶ 33) are sufficient to allow the Court to conclude that a cell phone is "residential" for Motion to Dismiss purposes. *See, e.g.*, *Hall v. Smosh Dot Com, Inc.*, 72 F.4th 983, 986 (9th Cir. 2023); *Rosenberg v. LoanDepot.com LLC*, No. 19-10661-NMG, 2020 U.S. Dist. LEXIS 11928, at *27 (D. Mass. Jan. 24, 2020) ("Rosenberg submits that he placed his cellular phone number on the National Do Not Call registry and that he uses his cell phone as his residential line. Those allegations are adequate for the purposes of pleading."); *Barton v. Temescal Wellness, LLC*, No. 4:20-cv-40114-TSH, 2021 U.S. Dist. LEXIS 42211, at *13-14 (D. Mass. Mar. 8, 2021); *Boardman v. Green DOT Corp.*, No. 21-cv-174, U.S. Dist. LEXIS 156403, at *1, 4-6 (W.D.N.C. Aug. 19, 2021); *Sagar v. Kelly Auto Grp., Inc.*, No. 21-cv-10540, 2021 U.S. Dist. LEXIS 227781, at *16 (D. Mass. Nov.

---

[1] Indeed, the official website to register telephone numbers on the Registry, donotcall.gov, contains an illustration of a traditional landline telephone superimposed on top of a smartphone.

29, 2021); *Becker v. Pro Custom Solar LLC*, No. 219CV535FTM29NPM, 2020 WL 474647, at *6 (M.D. Fla. Jan. 29, 2020).

To this end, since at least 2003, the FCC[2] has established a presumption that "wireless subscribers who ask to be put on the national do-not-call list are residential subscribers." *FCC Report and Order*, 18 FCC Rcd. 14014, 14039 (2003) (cleaned up). This is so, *even if they also use such numbers partially for business purposes.* Indeed, the Fourth Circuit in *Krakauer*, 925 F.3d at 657, concluded the TCPA's language was clear and that numbers on the Do Not Call Registry, by virtue of their mere registration, are *presumptively residential*:

> The statute marks its own boundary. Suit can only be brought by those who receive multiple violative calls. Calls are only violative if the phone number was on the Do-Not-Call registry. And **a number can only be placed on such a registry if the number is a residential line.** Whatever work we may be required to do for more broadly worded statutes, Congress did the work for us here.

Furthermore, the FCC recently clarified this essential holding in its *Second Report and Order, Second Further Notice of Proposed Rulemaking in CG Docket Nos.02-278 and 21-402, and Waiver Order in CF Nocket No. 17-59*, No. FCC 23-107 (FCC released Dec. 18, 2023) [hereinafter FCC Order]. In response to recent abuse of the ilk here and attempts to sidestep the TCPA's requirements for calls to cell phones, the FCC saw fit to "codify" its existing regulations that the Registry has "long applied to wireless phones." FCC Order at p. 26, ¶63. In the FCC Order, the FCC explicitly confirmed that the TCPA's protections apply to cell phones, and not just for telephone calls, but text messages, as well. FCC Order at p. 10 ("Texters must have the consumer's prior express invitation or permission before sending a marketing text to a wireless number in the DNC Registry. The Commission previously concluded that the national database

---

[2] The Federal Communication Commission ("FCC") possesses authority to issue implementing rules and regulations for the TCPA. *See* 47 U.S.C. § 227(c)(1)(A-E) and (c)(2) and (c)(3). Pursuant to that authority, the FCC promulgated regulations relating to the implementation, interpretation of the TCPA. *See* 47 C.F.R. § 64.1200(a)-(m).

should allow for the registration of wireless telephone numbers and that such action will further the objectives of the TCPA and the Do-Not-Call Act.").

Simply put, this Court's decisions in *Politi* and *Sunshine Consulting* were wrong and did not benefit from the additional allegations that the Plaintiff included here, including that she uses the number for residential purposes. The *Politi* and *Sunshine* Courts' reading of the statute rested on a statutory interpretation that was "a bit strained as an initial matter." *Riley v. California*, 573 U.S. 373, 397 (2014). As with any question of statutory interpretation, the court's inquiry "begins with the text." *Ross v. Blake*, 578 U.S. 632, 638 (2016). And, under applicable text of the TCPA at the time it was enacted, a "residential subscriber refers to a subscriber to telephone exchange service that is not a business subscriber" and a business subscriber is a "subscriber to telephone exchange service for businesses." 47 C.F.R. § 64.2305(b), (d). Accordingly, consumers who subscribe to telephone exchange services for consumers are protected by the Registry. Businesses who subscribe to telephone exchange services for businesses are not.

Mrs. Forteza has explicitly alleged that her cell phone is not and cannot be subscribed to a "telephone exchange service for businesses" as the statutory text requires. (Compl. ¶ 46). Instead, she has alleged, and this Court must accept as true, that her cell phone number is "registered in her personal name," that she "pays the cell phone from her personal accounts," and that the "phone is not primarily used for any business purpose." Defendant's argument must therefore fail.

Defendant eschews actual argument on this point in favor of illusionary tactics presented to this Court to make the case law on its position appear stronger than it actually is. Defendant either selectively quotes from cases to hide the Court's business/residential reasoning or otherwise relies on unpersuasive case law. Both this Court and other courts in this Circuit have

11

expressly rejected the reasoning proffered in *Politi* and *Sunshine Consulting*. This Court must decline to follow those cases, particularly in light of the FCC's recent guidance. In any event, in those cases, the plaintiffs did not adequately allege to the Court's satisfaction that a particular cellular number was used for residential purposes because the numbers were business cell phones. In fact, this very court in interpreting *Politi* has recognized it as an "isolated authority" that is contrary to "common sense." *Hirsch*, 337 F.R.D. at 131. Other Texas courts, including this one, have likewise concluded. *Callier v. Nat'l United Grp., LLC.*, 2021 WL 5393829, at *9 (W.D. Tex. Nov. 17, 2021) ("[Defendant's] claim that § 64.1200(d) does not apply to cell phones is . . . erroneous; it applies to any cell phone being used as a residential phone."); *Hunsinger v. Alpha Cash Buyers, LLC*, No. 21-cv-1598, 2022 WL 562761, at *3 & n.3 (N.D. Tex. Feb. 24, 2022) (holding that "cellular telephone owners" may qualify as "residential telephone subscribers" when they receive "telephone calls and text messages on a cellular telephone that [is] used for residential purposes").

In enacting the Do Not Call provisions of the TCPA, Congress chose to extend protection to "residential telephone subscribers." 47 C.F.R. § 64.1200(c)(2). Reading the term "residential" to exclude other services, such as cellular telephone services, used for personal, household purposes is inconsistent with multiple canons of construction. In using "residential" language, Congress realized that, in the future, traditional residential forms of telecommunication like copper landlines may come to be supplanted by other technologies, like ISDN and T1 lines, Fiber Optics, VoIP, and cellular technologies. In using the term "residential," Congress meant what it said. It meant to contrast residential service *uses* from nonresidential *uses* and restrict DNC Registry protections to the former, regardless of the type of technology that the consumer chooses to use or a technology that can change. Congress' intent in enacting the TCPA and the

regulations enacting the DNC Registry was to protect the *personal* phone numbers of consumers and even business owners from intrusive telemarketing calls.

Defendant also argues that the Plaintiff's do not call list complaint must also fail because it claims that the Plaintiff did not allege that she requested to be placed on the Defendant's do not call list or receive a copy of the Defendant's do not call policy. The Defendants evidently called the Plaintiff despite her number being on the national do not call registry and continued to do so in an attempt to sell her multiple contracts. (Compl. ¶ 39–41). Mrs. Forteza explicitly states that the calls came from "spoofed and non-working caller ID's," thus preventing her from making the do not call list or policy requests. (Compl. ¶ 40, 43).

Denying consumers like Mrs. Forteza the privacy protections afforded by the TCPA to their DNC-registered wireless numbers or other non-copper residential landlines because their primary telephone is not based on traditional wireline technology is inconsistent with this directive.  Such allegations are plainly sufficient to state a claim under the Registry provisions of the TCPA, and her Section 227(c) claims must therefore proceed.

2. Violations of the Texas Business and Commerce Code are independently actionable even if there is no TCPA violation, as its plain text makes clear. Regardless, the Plaintiff has adequately pled TCPA violations.

As its final argument for why this case should be dismissed, Defendant argues that that Plaintiff's TBCC claims must fail because the "Texas TCPA" (sic) "proscribes only that conduct which is also prohibited by the TCPA." As authority for this proposition, Defendant cites to *Cherakaoui v. Stantander Consumer USA, Inc.*, 32 F. Supp. 3d 811, 815 (S.D. Tex. 2014), which addressed Section 305 of the TBCC. A careful reading of the Court's opinion in *Santander*, however, illustrates the basis for its reasoning and elucidates why it is different than the case at issue here. In that case, the Plaintiff provided his consent to the caller to make calls to him, thus

providing an affirmative defense to the Plaintiff's TCPA claims. And, under both the TBCC and the TCPA, consent is a perfect affirmative defense to such claims. 47 U.S.C. § 227(b)(1); Tᴇx. Bᴜs & Cᴏᴍ. § 305.001(2) ("the called person has not consented").

A careful reading of the Plaintiff's complaint reveals it is different than *Santander* in that she brings two claims under the provisions of the TBCC, Sections 302 and 305, in her third and fourth claims for relief, respectively. As will be explained below, Section 302 contains *no reference to* the TCPA and therefore stands on its own without a predicate TCPA violation. And though Section 305 makes it unlawful to commit a TCPA predicate violation, that is not the only avenue for recovery under the text of that section, as the plain text makes clear. In any event, because the Plaintiff has adequately pled the predicate TCPA violations as described above, her claims must not be dismissed.

Starting with Section 305 of the TBCC, that section provides for a private right of action for a person who "receives a communication that violates [the TCPA or its regulations] *or* Subchapter A." Tᴇx. Bᴜs & Cᴏᴍ. § 305.053 Thus, by the *very plain text of the statute*, the Plaintiff can make out a claim under Section 305 of the Texas Business and Commerce Code by *either* (1) pleading a predicate violation of the TCPA, *or* (2) pleading a violation of Subchapter A of Section 305. *Id.* Thus, even if the Plaintiff's TCPA claims fail (which they do not for the reasons articulated above), the Plaintiff has pled facts sufficient to give rise to the inference that (1) the Defendant made a telephone call using an "automatic dial announcing device" (Compl. ¶ 14), (2) to a "mobile telephone" (Compl. ¶ 46), (3) without her consent (Compl. ¶ 2).Tᴇx. Bᴜs & Cᴏᴍ. § 305.0001. She has therefore pled a claim under Subchapter A of Section 305 and is entitled to recovery thereunder, even if she has not pled a TCPA claim.

14

Next, Section 302 of the TBCC provides that a "seller may not make a telephone solicitation from a location in this state or to a purchaser located in this state unless the seller holds a registration certificate for the business location from which the telephone solicitation is made." TEX. BUS & COM. § 302.101. The plain text of Section 302, along with the provision authorizing the private right of action thereunder, make no reference to pleading a TCPA violation as a predicate claim. TEX. BUS & COM. § 302.302. Thus, no part of the statutory text as it pertains to Section 302 supports the Defendant's argument, which should therefore fail.

Thus, because both Sections 302 and 305 of the TBCC permit recovery unconnected to whether or not the Plaintiff has pled a TCPA violation, and because the Plaintiff nevertheless has done so, her TBCC claims must also be permitted to proceed.

## V.   CONCLUSION

This Court must deny Defendant's motion to dismiss in its entirety. Alternatively, to the extent that the Court finds that additional questions or deficiencies remain, it should permit the Plaintiff to amend to correct the deficiencies.

Dated: January 10, 2023

/s/ Andrew Roman Perrong
Andrew Roman Perrong (E.D. Tex. # 333687PA)
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, Pennsylvania 19038
Phone: 215-225-5529 (CALL-LAW)
Facsimile: 888-329-0305
a@perronglaw.com

*Attorney for Plaintiff*

15

**CERTIFICATE OF SERVICE**

Counsel for Plaintiff certifies that on January 10, 2023, he filed the foregoing on the

Court's CM/ECF system, which will send electronic notification to all counsel of record.


Dated: January 10, 2023

/s/ Andrew Roman Perrong
Andrew Roman Perrong (E.D. Tex. # 333687PA)
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, Pennsylvania 19038
Phone: 215-225-5529 (CALL-LAW)
Facsimile: 888-329-0305
a@perronglaw.com


*Attorney for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | |
|---|---|
| MARICEL FORTEZA, | Case No. 4:23-CV-00401-ALM-KPJ |
| Plaintiff, | |
| v. | **JURY TRIAL DEMANDED** |
| PELICAN INVESTMENT HOLDINGS GROUP, LLC DBA AAP AND AUTO SERVICE DEPARTMENT, US DEALER SERVICES, INC. DBA US AUTO, PALMER ADMINISTRATIVE SERVICES, INC., SING FOR SERVICE, LLC DBA MEPCO | |
| Defendants. | |

**[PROPOSED] ORDER DENYING DEFENDANT
SING FOR SERVICE, LLC D/B/A MEPCO's MOTION TO DISMISS**

**THIS CAUSE** came before the Court upon Defendant Sing for Service, LLC d/b/a Mepco's

Motion to Dismiss (ECF No. 27), this Court does **FIND, ORDER AND ADJUDGE:**

1.  The motion (ECF No. 27), is hereby DENIED.

17